In the Matter of the Application of TRACY DEVELOPMENT COMPANY and NEW YORK STATE ELECTRIC & GAS CORPORATION, Petitioners, for an Order Pursuant to Article 78 of the Civil Practice Act against MILO R. MALTBIE and Others, Commissioners, Constituting as Such the Public Service Commission of the State of New York and State Division of the Department of Public Service of the State of New York, Respondents.

(Case No. 8948.)

Third Department, March 6, 1940.

*Edmund B. Naylon* [*George Foster, Jr.*, with him on the brief], for the petitioners.

*Gay H. Brown, Counsel to Public Service Commission* [*Laurence J. Olmsted* with him on the brief], for the respondents.

FOSTER, J. This is a proceeding to review a determination of the Public Service Commission which denied consent to the proposed sale and transfer by the Tracy Development Company (hereafter called Tracy Company) of all of its property to the New York State Electric & Gas Corporation (hereafter called New York Company). This denial is attacked on the ground that the evidence indicates the proposed transfer is not adverse to the public interest, and that the ruling is, therefore, arbitrary and capricious.

The proceeding was commenced with a petition by both companies to the Commission for consent to transfer the Tracy Company property to the New York Company for the nominal consideration of one dollar, subject, however, to outstanding bonds of the Tracy Company as of December 31, 1936, in the sum of $116,000. Hearings were held and the following facts were established.

The Tracy Company is a business corporation, organized in 1911, with a capitalization of $300,000. It owns a hydro-electric plant at Waterloo, Seneca county, N. Y. This plant was built in the years 1914 and 1915, and after the Public Service Commission had approved a bond issue therefor in the sum of $250,000. The company does not operate the plant itself, nor does it render any service

directly to the public. On October 1, 1913, it entered into an agreement and lease with the Central New York Gas & Electric Company, under the terms of which it agreed to erect the plant, and the lessee agreed to operate the plant and purchase all electric energy generated thereat. This lease was to run for fifty years, and it further provided that the lessee would pay for energy at the rate of seven and one-half mills per kilowatt and a minimum annual rental of $25,000; with a rebate of $5,000 annually for the first five years and $4,000 annually thereafter, in consideration of operation, maintenance and repairs by the lessee. Subsequently the minimum rental was fixed at $19,800. The lessee also guaranteed payment of the principal and interest of the bond issue mentioned. This agreement was approved by the Public Service Commission in the same order that approved the bond issue, and also validated the issuance of capital stock in the sum of $300,000.

Subsequently the Central New York Gas & Electric Company was merged with the Empire Gas & Electric Company. Then the latter company was merged with the New York State Electric & Gas Corporation, the proposed purchaser and one of the petitioners herein. These mergers were approved by the Commission. By these mergers the New York Company, of course, succeeded to the rights and obligations of the original lessee under the lease. While we are dealing with two separate entities, it should be stated that all of the capital stock of both corporations is owned by NY PA NJ Utilities Company.

The New York Company serves a large area in southern and central New York, and its field of operations completely surrounds the Tracy plant at Waterloo, and apparently it is the only outlet for the distribution of electric energy generated at the Tracy Company plant.

The record is replete with figures, estimates and computations, and many of the latter are difficult to follow because of variance in the multiplicands used. To reach the decisive issue, however, it is not necessary to analyze in complete detail the various results obtained. All agree that the proposed transfer will effect a reduction in operating expenses and a simplification of the corporate structure by the elimination of one corporation. They differ only as to the amount of the reduction.

Evidence of the cost of producing electric energy was offered by the Commission and by petitioners. Under the lease and based upon a sixteen-year average, the Commission computed the cost at $33,475 annually, or 9.83 mills per kilowatt. Using a sixteen and three-quarter year average, petitioners computed the cost to be $33,025, or 9.3 mills per kilowatt. It was estimated by the

Commission that if the proposed transfer were made the annual cost would be $28,417, or 8.3 mills per kilowatt. Petitioners estimated the cost after transfer at $25,870 annually, or 7.3 mills per kilowatt. If the Commission's estimate is taken an annual saving of $5,000 in round figures would be effected by the change. This would be increased to $7,000 in round figures if the petitioners' estimate is adopted. The difference is accounted for in the variance of figures as to taxes and the rate of bond interest. Since a change in the rate of bond interest would require a refunding process, and this would be somewhat speculative, the Commission's estimate of a $5,000 reduction in operating expenses is more reliable.

The question presented then is whether the Commission acted arbitrarily and unreasonably in refusing to approve a transfer of the Tracy plant for $116,000, which would concededly save $5,000 annually in operating expenses and eliminate an unnecessary corporation, together with the accounting charges and expenses in connection therewith.

The determination of the Commission was by a divided vote, three to two. A majority held that the Tracy plant had no economic value to the New York Company and that its transfer was, therefore, not in the public interest. Also that the transfer might unnecessarily hamper any future rate proceeding, and that the benefit of any saving effected would inure to the holding company and not to the public. The majority held further, that in determining the question of public interest the Commission was not bound to consider the terms of an agreement between two subsidiaries of a holding company. The suggestion is made that the holding company might compel the cancellation of the lease between the two corporations, although it is virtually conceded that neither the Commission nor the courts have power to require such action.

The minority opinion holds in substance that due to the lease, whereby the New York Company is obligated to pay a minimum rental and is the guarantor of the bonds issued by the Tracy Company, the plant of the latter does have an economic value to the New York Company and its consumers; and in view of the saving in operating expenses that will result from the latter's actual ownership of the property the application should be approved. The suggestion of cancellation of the lease by the holding company is answered in the minority opinion by a computation which indicates that even upon that basis the cost per kilowatt hour would be slightly higher than if the transfer were permitted.

The real point at issue is apparently the question of economic value. The difficulty to be apprehended in a future rate case is too vague and unsubstantial to be given any consideration. The same

argument of difficulty in a rate proceeding might be applied to many legitimate transactions between utilities. The question of economic value, however, is quite another matter. There, a majority of the Commission differs with the minority in their conception of such value as applied to the situation. The majority view is that the Tracy plant has no economic value because there is evidence to indicate that the New York Company can produce power cheaper at its own Dresden plant than it can at the Tracy plant. It waives aside the fact that the lessee is bound to pay an annual minimum rental of $19,800, even though no power is taken from the Tracy plant, on the ground that the agreement between the two companies is not a factor to be considered in determining what the Commission should do in the public interest.

This appears to be the crux of the matter. If the Commission may ignore the lease and the situation created thereby, then undoubtedly its conception of economic value should prevail, because there is evidence sufficient to support a finding that the New York Company can procure power more cheaply from its own Dresden plant and elsewhere than it can produce the same at the Tracy plant. At least the evidence on this point is such that a court would not be justified in interfering with the determination of the Commission in that regard. On the other hand, if the lease, and the situation created thereby, ought to be recognized then the annual saving effected cannot be fairly disregarded, and a refusal to approve the transfer under such circumstances would be arbitrary and unreasonable.

We think that the situation as created by the lease should have been recognized as a decisive factor. It is a result, in part at least, of express consent on the part of the Commission to the execution of the lease and all the terms thereof. Thus the lease is more than a mere agreement between two subsidiaries, for it bears the stamp of regulatory approval, and has created rights and liabilities that may not now be justly ignored. Since its original approval the Commission has recognized it in subsequent merger proceedings. In the last of these proceedings, the merger of the Empire Gas & Electric Company, approved in 1937, the Commission, impliedly, if not expressly, determined that the Tracy plant had an economic value for public requirements. The Commission should not now be permitted to disregard these prior determinations, when no fraud or irregularity has been shown. We reach the conclusion that a majority of the Commission adopted an erroneous theory of economic value, and that its action in denying consent to the proposed transfer was arbitrary and unreasonable under the circumstances disclosed.

The determination of the Commission should be annulled and the matter remitted for approval, with fifty dollars costs and disbursements to the petitioners.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur; BLISS, J., dissents, in a memorandum.

BLISS, J. (dissenting). The Public Service Commission was fully justified in holding that this proposed transfer is not in the public interest. This record shows that the same amount of power now produced by the Tracy plant at Waterloo can be made by the purchaser at a lower cost at a nearby steam plant of its own. That fact alone is ample reason why the purchase of the Tracy plant should not be approved.

The determination should be confirmed.

Determination annulled, with fifty dollars costs to petitioners.